**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| QUWAN J. SHIELDS, et al., | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | **Civil Action No. 3:12-CV-1900-N** |
| | § | |
| WELLS FARGO BANK NA, | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the Special Order No. 3-251, this case has been referred for pretrial management. Before the Court for recommendation is *Defendant's Motion to Reurge Defendant's Motion to Dismiss Plaintiffs' First and Second Amended Complaints*, filed August 17, 2012 (doc. 14).[1] Based on the relevant filings and applicable law, the motion to dismiss the second amended complaint should be **GRANTED**.

**I.  BACKGROUND**

This case involves foreclosure of real property located at 5601 Winding Woods Trail, Dallas, Texas 75227 (the Property).  (doc. 1 at 1.)[2]  On May 1, 2012, Quwan J. and Melody J. Shields (Plaintiffs) initiated this *pro se* suit against Wells Fargo Bank, N.A. (Defendant) in the 44th Judicial District Court of Dallas County, Texas.  (doc. 1-5.)

---

[1]  Although titled as a "Motion to Reurge Defendant's Motion to Dismiss Plaintiffs' First and Second Amended Complaints", the first paragraph and the body of the motion make clear that Defendant is moving to dismiss Plaintiffs' "live pleading", which is the second amended complaint.  (*See* doc. 14 at 1-2.)  There was no prior motion to dismiss either of the amended complaints to be re-urged, only a motion to dismiss the state-court petition.  (*See* doc. 3.)  In addition, the Federal Rules of Civil Procedure make no provision for a "motion to reurge."

[2]  Citations to the record refer to the cm/ecf system page number at the top of each page rather than the page numbers at the bottom of each filing.

1

In their second amended complaint, Plaintiffs allege that they purchased the Property in 2004 with a note and a deed of trust securing the note. (docs. 12 at 3; 7-3 and 7-4.) The note named Defendant as Lender, and the deed of trust named Dudley Beadles as trustee and Defendant as beneficiary. (docs. 7-3 at 1; 7-4 at 1.) On August 25, 2005, Plaintiffs refinanced their mortgage with ComUnity Lending, Inc. (CLI). (doc. 12 at 3.) They executed a note naming CLI as Lender and a deed of trust naming Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary of the deed of trust and nominee for CLI and its successors and assigns. (docs. 7-1 at 1; 7-5 at 1.)

After Plaintiffs refinanced their loan, they "received title information", and Defendant "received [a] loan payoff." (doc. 12 at 3.) Defendant then purportedly sent them "payment slips" and they began submitting their mortgage payments to Defendant again. (*Id.*) At some point, they "ha[d] problems making on time [their] mortgage payments and tri[ed] for loan modifications." (*Id.*) In January 2012, Defendant purportedly foreclosed on the Property. (*Id.*) Plaintiffs allege that CLI "failed to sale [*sic*] or transfer the rights of the mortgage to [Defendant] and/or record it with the County [Clerk] before [CLI] went [out] of business in 2007." (*Id.*)

Plaintiffs claim that "[i]n the event that the note and the mortgage ... were negotiated, assigned, transferred, or deposited from the original lender and original mortgagee, ... [they] deny ... the lawfulness of such transaction." (*Id.* at 1.) Defendant also failed to provide them with "notice of default and acceleration as required by the mortgage, ... the note, ... [and] Federal Regulations." (*Id.* at 2.) They "dispute the amount claimed as owed under the loan documents [and] affirmatively allege [having made] payment." (*Id.*)

Plaintiffs expressly assert claims for suit to quiet title and trespass to try title. (*Id.* at 1.)

2

They also appear to assert claims for wrongful foreclosure, breach of contract, and violations of the Real Estate Settlement Practices Act (RESPA)12 U.S.C. § 2605; the National Housing Act, 12 U.S.C. § 1707 *et seq.* and 24 C.F.R. § 203.500; a statute relating to "housing and small business loans," 38 U.S.C. § 3701 *et seq.* and 38 C.F.R. Part 36; and the Doug Bereuter Section 502 Single Family Housing Loan Guarantee Act, 42 U.S.C. § 1472(h) and 7 C.F.R. §§ 1980.301 and 1980.307 *et seq.* (*See id.* at 2–3.) They request damages "for the value of the [Property]," pre and post judgment interest, exemplary damages, costs of suit, an accounting, and a court order clearing title to the Property. (*Id.* at 3–4.)

On June 19, 2012, Defendant removed the action to this court on the basis of diversity jurisdiction and moved to dismiss Plaintiffs' state-court petition. (docs. 1 and 3.) On July 9, 2012, Plaintiffs filed an amended complaint. (doc. 7.) Defendant's motion to dismiss the petition was therefore deemed moot by order dated July 10, 2012. (doc. 8.) On August 12, 2012, Plaintiffs filed their second amended complaint along with their scheduling proposal. (doc. 12.) Defendant moved to dismiss Plaintiffs' second amended complaint on August 17, 2012. (doc. 14.) With a timely filed response (doc. 16) and a timely filed reply (doc. 17), the motion is now ripe for recommendation.

## II. MOTION TO DISMISS UNDER RULES 8(a) & 12(b)(6)

Defendant moves to dismiss Plaintiffs' second amended complaint for failure to state any cognizable claim for relief under Fed. R. Civ. P. 8(a) or to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). (doc.14 at 2–3.)

Under Rule 8(a)(2), "[a] pleading that states a claim for relief . . . must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) in turn allows motions to dismiss for failure to state a claim upon which relief can be

granted. Fed. R. Civ. P. 12(b)(6). Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. The alleged facts must "raise a right to relief above the speculative level." *Id.* In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 129 S. Ct. at 1949 (citations omitted). When plaintiffs "have not nudged their claims across

4

the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 129 S. Ct. at 1950–51.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. Pleadings in the 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins*, 224 F.3d at 499 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003). In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). When a party presents "matters outside the pleading" with a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the evidence for purposes of the motion to dismiss. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007). However, "[i]f . . . matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Here, Plaintiffs attached to their first amended complaint and reference in their second amended complaint several documents, including the notes and deeds of trust that they executed in

July 2004 and August 2005 as well as correspondence from Defendant and CLI. (*See* docs. 7-1–7-11.) Because these documents are referenced in Plaintiffs' second amended complaint and are central to their claims, they are considered part of the pleadings and conversion of the motion to dismiss into a motion for summary is unnecessary.

## A.   Authority to Foreclose

Defendant argues that Plaintiffs' allegations that they "'question the assignment' and 'Defendant is not the real party in interest and has failed to join one or more necessary parties' fail to set forth the basis of their claims against Defendant." (doc. 17 at 2–3.) In their complaint, Plaintiffs allege that if their mortgage was assigned, they "deny ... the lawfulness" of such assignment. (doc. 12 at 1.) They also claim that CLI "failed to ... transfer the rights of the mortgage to [Defendant]." (*Id.* at 3.) In their response to Defendant's motion, they clarify their initial contentions by arguing that Defendant must produce the "original debt instrument" as "proof of [its] authority" to foreclose on the Property. (doc. 16-1 at 1.) They also argue that despite being the servicer of their mortgage, Defendant lacked authority to foreclose because "[o]nly the owner of the loan can foreclose." (*Id.* at 2.) They allege that ownership of the loan "is proven by producing a properly executed and recorded loan assignment." (*Id.*)

Plaintiffs' allegation that Defendant must produce the original debt instrument as "proof" of its "authority" to foreclose amounts to what is commonly referred to as the "show-me-the-note" theory. *See Bennett v. JPMorgan Chase*, No. 3:12-CV-212-N, 2012 WL 2864751, at *3 (N.D. Tex. June 12, 2012), *recommendation adopted*, 2012 WL 2864467 (N.D. Tex. July 12, 2012). "Advocates of this theory believe that only the holder of the original wet-ink signature note has the

lawful power to initiate a non-judicial foreclosure."[3] *Wells v. BAC Home Loan Servicing, L.P.*, No. W-10-CA-00350, 2011 WL 2163987, at * 2 (W.D. Tex. Apr. 26, 2011) (citation and internal quotation marks omitted).  The theory has been repeatedly rejected in this circuit.  *Bennett*, 2012 WL 2864751, at *3; *see also Cervantes v. U.S. Bank Nat'l Ass'n*, No. 3:12-CV-0661-D, 2012 WL 1605558, at *3 (N.D. Tex. May 8, 2012) (Fitzwater, C.J.) (collecting cases).

      "Texas courts have refused to conflate foreclosure with enforcement of a promissory note." *Reardean v. CitiMortgage, Inc.*, No. A-11-CA-420-SS, 2011 WL 3268307, at *3 (W.D. Tex. July 25, 2011).  Under Texas law, promissory notes and deeds of trust are distinct obligations that afford lenders distinct remedies upon default, "the note against the borrower and the lien against the real property." *Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03-11-00644-CV, 2012 WL 3793190, at *3 (Tex. App.—Austin Aug. 30, 2012, no pet.) (mem. op.) (citation omitted).  In cases where the lender seeks a personal judgment against the borrower, it "must typically demonstrate that it is the holder of the note by producing the original wet-ink instrument." *Millet v. JP Morgan Chase, N.A.*, No. SA-11-CV-1031-XR, 2012 WL 1029497, at *3 (W.D. Tex. Mar. 26, 2012).  By contrast, "[f]oreclosure is an independent action against the collateral" that "enforces the deed of trust, not the underlying note." *Reardean*, 2011 WL 3268307, at *3.

      The Texas Property Code allows mortgagees and mortgage servicers to conduct a non-judicial foreclosure sale "under a power of sale conferred by a deed of trust or other contract lien." Tex. Prop. Code Ann. § 51.002 (West 2007).  The Code defines mortgagee as "the grantee, beneficiary, owner, or holder of a security instrument," or "if the security interest has been assigned

---

      [3] Plaintiffs' contention that "only the owner of the loan can foreclose" appears to be a variation of their "show-me-the-note" theory because they essentially request that Defendant produce some "wet-ink" instrument showing that it had the right to foreclose under the note and deed of trust—that is, the "loan."

of record, the last person to whom the security interest has been assigned of record." *Id.* § 51.0001(4)(A),(C). It defines "mortgage servicer" as "the last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument." *Id.* § 51.0001(3). A mortgagee may be its own mortgage servicer. *Id.* Courts have held that the Texas Property Code does not require a mortgagee to produce proof of ownership of the original note or deed of trust before conducting a non-judicial foreclosure sale. *See, e.g.*, *Bennett*, 2012 WL 2864751, at *3; *Darocy v. Chase Home Fin., LLC*, No. 3:10-CV-1259-L, 2012 WL 840909, at *10 (N.D. Tex. Mar. 9, 2012) (citations omitted); *Cole v. Fed. Home Loan Mortg. Corp.*, No. 3:11-CV-1833-M-BK, 2012 WL 555194, at *2 (N.D. Tex. Jan. 23, 2012), *recommendation adopted*, 2012 WL 556055 (N.D. Tex. Feb. 21, 2012). As the statute provides, being the "holder" of a security instrument is only one of several ways to prove mortgagee status. *See* Tex. Prop. Code § 51.0001(4)(A),(C). A mortgage servicer may also administer a non-judicial foreclosure sale on behalf of a mortgagee if the two entities enter into a servicing agreement and provide the borrower with certain disclosures. *See id.* § 51.0025. As courts have noted, however, no provision of § 51.0025 "require[s] the mortgage servicer to be the 'holder' of the Note and Deed of Trust or to produce the original loan documents." *Sawyer v. Mortgage Elec. Registration Sys., Inc.*, No. 3-09-CV2303-K, 2010 WL 996768, at *3 (N.D. Tex. Feb. 1, 2010), *recommendation adopted*, 2010 WL 996917 (N.D. Tex. Mar. 17, 2010); *see also Darocy*, 2012 WL 840909, at *10 (explaining that § 51.0025 of the Texas Property Code "contemplates that someone other than the holder of the original [security instrument] may lawfully foreclose on the security interest").

Accordingly, Plaintiffs' allegation that Defendant was required to produce the "original debt instrument" prior to foreclosing cannot support any claim against Defendant as a matter of law. *See*

*Islamic Ass'n of DeSoto, Texas, Inc. v. Mortgage Elec. Registration Sys., Inc.*, No. 3:12-CV-0613-D, 2012 WL 2196040, at *2 (N.D. Tex. June 15, 2012) (Fitzwater, C.J.). Likewise, their allegation that Defendant (as the servicer of their mortgage) could not foreclose on the Property because it was not "the owner" of their "loan" cannot support any claim for relief; it contravenes Texas law.[4]  *See Darocy*, 2012 WL 840909, at *10.  To the extent that Plaintiffs' claims are based on these allegations, their claims are subject to dismissal for failure to state a claim.

**B.      Suit to Quiet Title and Trespass to Try Title**

Defendant moves to dismiss Plaintiffs' claims for quiet title and trespass to try title, arguing that although they assert these claims in the title of their complaint, Defendant "cannot determine from the [complaint] if these claims are in fact being asserted against it."  (doc. 14 at 3.)

A suit to quiet title, also known as a claim to remove cloud from title, "relies on the invalidity of the defendant's claim to property." *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.).  This suit "enable[s] the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right."  *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.) (citation and internal quotation marks omitted).  To prevail, a plaintiff must show that: (1) he has an interest in a specific property; (2) his title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable.  *Hurd v. BAC Home Loans Servicing, LP*, No. 3:11-CV-1752-M, 2012 WL 1106932, at *16 (N.D. Tex. Mar. 29, 2012) (citing *U.S. Nat'l Bank Ass'n v. Johnson*, No. 01-10-00837-CV, 2011 WL 6938507, at *3 (Tex. App.—Houston [1st Dist.]

_____

[4]   Plaintiffs' contention that ownership of the loan "is proven by producing a properly executed and recorded loan assignment" has no merit because "recordation is not necessary for liens, deeds, or deeds of trust to be enforceable against the parties to those instruments."  *Bennett*, 2012 WL 160555, at *4 (citations omitted).

Dec. 30, 2011, no pet.) (mem. op.)).  The plaintiff "must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see he or she has a right of ownership that will warrant judicial interference."  *Id.* (citing *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied)).  Notably, the plaintiff must prove and recover on the strength of his own title, not on the weakness of his adversary's title. *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.).

"An action in trespass to try title is the method of determining title to lands, tenements, or other real property." Tex. Prop. Code Ann. § 22.001 (West 2000).  This action "is in its nature a suit to recover the possession of land unlawfully withheld from the owner and to which he has the right of immediate possession."  *Rocha v. Campos*, 574 S.W.2d 233, 235 (Tex. App.—Corpus Christi 1978, no writ.) (citations omitted).  To prevail, a plaintiff must either: "(1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned." *Hurd*, 2012 WL 1106932, at *17 (citing *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004)).  As with a suit to quiet title, the plaintiff "must recover upon the strength of his own title and not the weakness of the defendant's title." *Rocha*, 574 S.W.2d at 236 (citing to *Hejl v. Wirth*, 343 S.W.2d 226 (Tex. 1961) and *Kauffman v. Shellworth*, 64 Tex. 179 (1885)).

Here, Plaintiffs' sole reference to their purported title is their assertion that they "received title information after refinancing with [CLI]."  (doc. 12 at 3.)  Without more, however, this statement fails to raise a reasonable inference that they hold title to the Property.  They also attempt to challenge any claim to title on part of Defendant by claiming that CLI did not "transfer the rights of the mortgage" to Defendant and that Defendant had no authority to foreclose because it was not

the "owner" of their loan.  (docs. 12 at 3; 16-1 at 2.)  These allegations fail to raise a reasonable inference that they hold superior title to the Property vis-à-vis Defendant and, as previously discussed, they are legally unfounded.  Accordingly, Plaintiffs' quiet title and trespass to try title claims fail and should be dismissed for failure to state a claim.  *See Cole*, 2012 WL 555194, at *3 (dismissing quiet title and trespass to try title claims where the plaintiff alleged that the "Note and Deed of Trust were not lawfully transferred to [the defendant]" and that "he [was] entitled to proof that [the defendant] [was] the holder of the Note and entitled to enforce the Deed of Trust").

### III.  REMAINING CLAIMS

Although not expressly listed as claims, the allegations in Plaintiffs' complaint may be liberally construed as also asserting claims for wrongful foreclosure, breach of contract, and violations RESPA as well as other federal statutes.  The Court may *sua sponte* dismiss these claims on its own motion under Rule 12(b)(6) for failure to state a claim as long as Plaintiffs have notice of the Court's intention and an opportunity respond.  *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (citing *Shawnee Int'l., N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir. 1984)).  The fourteen-day time frame for filing objections to a recommended dismissal provides Plaintiffs with notice and an opportunity to respond.  *See Ratcliff v. Coker*, No. 9:08cv127, 2008 WL 4500321, at *3 n. 1 (E.D. Tex. Sept. 26, 2008).

### A.    Wrongful Foreclosure

In his reply, Defendant contends that Plaintiffs "make vague claims" that Defendant "failed to give [them] notice of default and acceleration" but they "[have] not sufficiently plead a cause of action or specific facts to support such a claim."  (doc. 17 at 2.)  Plaintiffs allege that Defendant failed to give them "notice of default and acceleration as required by the mortgage, ... the note, [and]

Federal Regulations." (doc. 12 at 2.) These allegations may be liberally construed as stating a wrongful foreclosure claim for failure to provide the notices required by chapter 51 of the Texas Property Code.[5]

The purpose of a wrongful foreclosure action is to protect mortgagors against mistake, fraud, and unfairness in foreclosure proceedings. *See In re Keener*, 268 B.R. 912, 921 (Bankr. N.D. Tex. 2001) (citing 30 Tex. Jur. 3d Deeds of Trusts and Mortgages § 177 (1998)). In Texas, "a debtor may recover for wrongful foreclosure when an irregularity in the foreclosure sale contributes to recovery of an inadequate price of the property." *Matthews v. JPMorgan Chase Bank, N.A.*, No. 3:11-CV-00972-M, 2011 WL 3347920, at *2 (N.D. Tex. Aug.1, 2011). The plaintiff must prove: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." *Hurd v. BAC Home Loans Servicing, LP*, No. 3:11-CV-1752-M, 2012 WL 1106932, at *15 (N.D. Tex. Mar. 29, 2012) (citing *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.)). A procedural defect may occur when the foreclosing party either "fails to comply with statutory or contractual terms," or "complies with such terms, yet takes affirmative action that detrimentally affects the fairness of the foreclosure proceedings." *Matthews*, 2011 WL 3347920, at *2. However, recovery is not available merely by showing a defect in the foreclosure process; "it is also necessary

---

[5] To conduct a lawful foreclosure in Texas, a mortgagee or mortgage servicer "must strictly satisfy the notice requirements set forth in the deed of trust and prescribed by law." *Gossett v. Fed. Home Loan Mortg. Corp.*, No. CIV.A. H-11-508, 2013 WL 321664, at *5 (S.D. Tex. Jan. 24, 2013) (citing *Univ. Savings Ass'n v. Springwoods Shopping Ctr.*, 644 S.S.2d 705, 706 (Tex. 1982)). "Texas law requires two primary notices in the foreclosure context: a notice of default, and a notice of sale." *Willeford v. Wells Fargo Bank, N.A.*, No. 3:12-CV-0448-B, 2012 WL 2864499, at *4 (N.D. Tex. July 12, 2012). Prior to issuing the notice of sale, a mortgage servicer must provide to the debtor written notice of default and intent to accelerate, and must give the debtor an opportunity to cure the default within a minimum of 20 days. *See* Tex. Prop. Code § 51.002(d).

that there be an inadequate selling price resulting from the defect." *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp.2d 725, 729 (N.D. Tex. 2011) (Fitzwater, C.J.).

Here, even if taken as true, Plaintiffs' allegation that Defendant failed to deliver notices of default and acceleration could not plausibly entitle them to relief for wrongful foreclosure because they fail to allege any facts showing that the Property was sold for a grossly inadequate price. They also fail to allege a causal connection between such failure and any grossly inadequate selling price. Accordingly, any wrongful foreclosure claim should be *sua sponte* dismissed for failure to state a claim. *See Byrd v. Chase Home Fin. LLC*, No. 4:11-CV-022-A, 2011 WL 5220421, at *4 (N.D. Tex. Oct. 31, 2011) (dismissing wrongful foreclosure claim where the plaintiffs alleged they did not receive the requisite notices under the Texas Property Code, but they failed to allege any facts establishing the other elements of the claim, including a grossly inadequate selling price resulting from this defect); *see also Pollett v. Aurora Loan Services*, 455 F. App'x 413, 415 (5th Cir. 2011) (per curiam) (affirming dismissal of wrongful foreclosure claim where the plaintiff "failed to allege ... a grossly inadequate selling price and a causal connection between a defect in the foreclosure sale proceedings and the grossly inadequate selling price").

## B.   Breach of Contract

Plaintiffs appear to assert a breach of contract claim by arguing that Defendant failed to give them "notice of default and acceleration as required by the mortgage [and] the note." (doc. 12 at 2.)

The essential elements of a breach of contract claim in Texas are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Hurd*, 2012 WL 1106932, at *8 (citations omitted).

Despite their references to clauses in "the mortgage" titled "Acceleration," "Remedies," and "Notices" and clauses in "the note" titled "Borrower's Failure to Pay as Required" and "Giving Notices," Plaintiffs do not specify which deed of trust and which note Defendant allegedly breached. (*See* doc. 12 at 2.)  Significantly, none of these documents require the lender to send any specific notice to the borrower.  They only prescribe the method for *delivering* notices i.e. "first class mail." (*See* docs. 7-1 ¶ 13, 7-3 ¶13, 7-4 ¶ 8; 7-5 ¶ 8).  Any claim for breach of contract should therefore be *sua sponte* dismissed for failure to state a claim.  *See King v. Wells Fargo Bank, N.A.*, No. 3-11CV-0945-M-BD, 2012 WL 1205163, at *2 (N.D. Tex. Mar. 20, 2012), *recommendation adopted*, 2012 WL 1222659 (N.D. Tex. Apr. 11, 2012) (dismissing breach of contract claim because the provisions in the deed of trust referenced by the plaintiffs contained no language "obligat[ing] the lender to provide any notice or other information to the borrower in the event of a default").

## C.    RESPA

In their discussion of the facts, Plaintiffs appear to assert a claim under RESPA by stating that CLI "failed to [sell] and transfer the rights under the mortgage" to Defendant, which "[was] a violation of Section 6 of [RESPA], 12 U.S.C. § 2605."  (doc. 12 at 3.)

RESPA protects borrowers by "requir[ing] mortgage lenders to clearly and completely disclose settlement costs ... and prohibit[ing] predatory practices in the settlement process."  *Val-Com Acquisitions Trust v. Chase Home Fin. LLC*, 3:10-CV-1214-K, 2011 WL 1938146, at *3 (N.D. Tex. May 19, 2011); *see also* 12 U.S.C. §§ 2605–2608.  Section 6 of RESPA imposes two notice requirements in connection with "federally related mortgage loan[s]."  *Hoover v. Wisecarver*, No. 3:03CV700JS, 2006 WL 2583735, at *3 (S.D. Miss. Sept. 7, 2006) (citing 12 U.S.C.A. § 2605 (West 2011)).[3]  First, at the time of application, the lender must disclose to the borrower that servicing of

the loan may be "assigned, sold, or transferred to any other person at any time while the loan is outstanding." *Id.* (citing 12 U.S.C. A. § 2605(a)).  Second, a servicer must notify the borrower "of any assignment, sale or transfer of the servicing of the loan to any other person." *Id.* (citing 12 U.S.C. § 2605(b)).

Section 6 of RESPA relates to providing notices to borrowers, not to transferring mortgage "rights" between lenders, as Plaintiffs seemingly allege.  Ultimately, their sparse factual allegations appear to state a claim against CLI instead of Defendant, as they allege that it was CLI who failed to transfer the rights under the mortgage to Defendant.  (*See* doc. 12 at 3.)  Because Plaintiffs fail to state a plausible RESPA claim against Defendant, any RESPA claim should be *sua sponte* dismissed.

D.      **Other Federal Claims**

Plaintiffs also appear to assert claims under three federal statutes and their accompanying regulations: (1) the National Housing Act, 12 U.S.C. § 1707 *et seq.* and 24 C.F.R. § 203.500; (2) 38 U.S.C. § 3701 *et seq.* and 38 C.F.R. Part 36, relating to housing and small business loans; and (3) the Doug Bereuter Section 502 Single Family Housing Loan Guarantee Act (implemented by the Rural Housing Service of the U.S.D.A), 42 U.S.C. § 1472(h) and 7 C.F.R. §§ 1980.301 and 1980.307 *et seq.*  (doc. 12 at 2–3.)  First, they contend that each statute applies only "[i]n the event that the[ir] ... mortgage" is subject to that specific statute.  (*See id.* at 3.)  Although they point to specific provisions that were allegedly violated, their claims read more like recitations of the elements of a violation than specific allegations of wrongdoing.  For instance, with respect to all three statutes, they claim that Defendant "failed to satisfy one or all of [certain] conditions precedent prior to filing its complaint."  (*See id.*)  These allegations are too vague and conclusory to state a

15

claim for relief that is plausible on its face, and are insufficient to put Defendant on notice of any wrongdoing. Accordingly, any claim under these statutes should be *sua sponte* dismissed for failure to state a claim.

### E.    Injunctive Relief

To obtain injunctive relief, a plaintiff "is required to plead and prove, inter alia, 'a substantial likelihood of success on the merits.'"  *Jackson v. Fed. Home Loan Mortg. Corp.*, No. 4:11-CV-507-A, 2011 WL 3874860, at *3 (N.D. Tex. Sept. 1, 2011) (citing *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)).  Here, Plaintiffs request "an accounting" and a "judgment for legal title to the [Property]."  (doc. 12 at 2–3.)  Because dismissal of Plaintiffs' claims is warranted on the merits, they cannot establish any likelihood of success on the merits.  *See id.* Accordingly, their request for injunctive relief should be dismissed.

### IV.  OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted.  *See Scott v. Byrnes*, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001).  Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a court order.  *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2.  A *pro se* plaintiff may also obtain leave to amend his complaint in response to a recommended dismissal.  *See Swanson v. Aegis Commc'ns Grp., Inc.*, 2010 WL 26459, at * 1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at * 1.  Nonetheless, courts may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to

respond to a motion to dismiss after being specifically invited to do so by the court, the defendant

has specifically noted the failure to respond, and the plaintiff has had ample opportunity to amend

the complaint. *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995). Dismissal with prejudice

is also appropriate if a court finds that the plaintiff has alleged his or her best case. *Jones v.

Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, Plaintiffs have amended their complaint twice since filing this action. (*See* docs. 7 and

12.) They also filed a third complaint along with their response to Defendant's motion to reurge its

motion to dismiss. (*See* doc. 16.)[6] It therefore appears that Plaintiffs have pled their best case to the

Court, so all their claims against Defendant should be dismissed with prejudice.

## V. RECOMMENDATION

Defendant's motion to dismiss Plaintiffs' second amended complaint should be **GRANTED.**

**SO RECOMMENDED** on this 5th day of February, 2013.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[6] All three complaints appear to be exact copies of their state court petition. (*See* doc. 1-5 at 1–4.)

17

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE